

FILED

SEP 2 5 2025

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

## <u>COMPLAINT</u>

## <u>FOR</u>

## <u>DECLARATORY AND INJUNCTIVE RELIEF</u>

## <u>UNDER (42 U.S.C. § 1983)</u>

|  |  |
|---|---|
| **David Kim Stanley,**<br>Plaintiff,<br><br>v.<br><br>**J. Robert Stump, in his individual**<br>**capacity;**<br>**DOE Defendants 1–10;**<br>**and others as identified,**<br>Defendants. | Case No. 2:25 CV -151 (to be assigned)<br><br><br>Judge CORKER / WYRICK (to be assigned) |

## INTRODUCTION

1. This is a civil action under 42 U.S.C. § 1983 for declaratory and injunctive relief. Plaintiff seeks to remedy ongoing violations of his constitutional rights under the Fourth and Fourteenth Amendments caused by (a) the extrajudicial acts of Defendant J. ROBERT STUMP, and (b) the administrative misconduct of DOE Defendants presently unknown but believed to be former, and/or current, employees or agents of the Wise County, Virginia Circuit Court Clerk's Office.

2. Plaintiff does not seek damages in this action. Instead, Plaintiff seeks narrowly tailored injunctive and declaratory relief necessary to halt the continuing deprivation of his rights and to preserve evidence critical to determining responsibility for the unconstitutional acts alleged herein.

3. Though the spectrum of wrongful actions has been considerable, Plaintiff carefully limits this Complaint's requests for relief, to the clearly non-judicial actions taken, that were outside any possible jurisdiction, and thus, taken well outside any judicial capacity. The Plaintiff's requests for unique relief do not implicate judicial immunity because Defendant Stump's conduct was nonjudicial and undertaken wholly without jurisdiction

4. The challenged conduct of the DOE Defendants, includes administrative/ministerial misconduct by unidentified DOE Defendants. These actions were undertaken wholly without jurisdiction or lawful authority, taken without any adjudicative function, and therefore are not protected by judicial or quasi-judicial immunity.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

5. This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and Rule 65 of the Federal Rules of Civil Procedure.

6. Venue is proper in the Eastern District of Tennessee, Greeneville Division, under 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to the claims occurred in this District, including extrajudicial acts by Defendant STUMP undertaken within Tennessee that directly impacted Plaintiff's sentencing and liberty interests.

7. Personal jurisdiction exists over all defendants because their acts were directed toward Plaintiff in this District, and the harm caused by those acts was suffered in this District.

**PARTIES**

8. **Plaintiff David Stanley** is a resident of Tennessee and was directly harmed by the conduct described herein.

9. **Defendant J. ROBERT STUMP** is a former state judicial officer of Virginia. He is sued here in his individual capacity only.

10. Plaintiff is presently uncertain of the true names and capacities of **Defendants DOE 1 through DOE 10**, inclusive, and therefore sues these defendants by fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained in Discovery.

11. Upon information and belief, one or more **DOE Defendants** were or are employed in or connected to the Wise County Circuit Court Clerk's Office at all relevant times. These DOE Defendant(s) participated in, directed, or otherwise contributed to the constitutional deprivations of the Plaintiff's civil rights, as set forth hereafter.

12. Upon information and belief, one or more **DOE Defendants** were individuals contacted and made aware of, the judicial misconduct investigation into Defendant Stump. By revealing the investigation to Defendant Stump, they violated Virginia statutes, thereby participating in, and contributing to the constitutional deprivations of the Plaintiff's civil rights, as set forth hereafter.

# FACTUAL ALLEGATIONS

13.     In January of 2002, Plaintiff was set to appear in Sullivan County Criminal Court, for a probation determination hearing before Judge Robert Cupp, sitting in Interchange.  Just prior to the hearing's commencement, Defendant STUMP, acting wholly outside his judicial capacity, placed a phone call for Interchange Judge Cupp, reaching into the private judicial chambers, to influence Plaintiff's pending sentencing proceeding in Tennessee.

14.     Tennessee Assistant Attorney General Eugene Perrin was in the chambers, and witnessed the call. In open-court testimony, (**EXHIBIT 1 Annexed Herewith**) General Perrin revealed publicly for the first time, that Defendant Stump demanded that Interchange Judge Cupp rule in a way that would ultimately allow Defendant Stump to continue profiting from the technology inventions of the Plaintiff.

15.     This extrajudicial act was undertaken absent jurisdiction, and for exploitative, coercive purposes.

16.     His testimony included the revelation of Defendant Stump having orchestrated unlawful exploitation of the Plaintiff, including unlawfully profiting from the Plaintiff's technical and business abilities.

**General Perrin Testimonial Redact from EXHIBIT 1**

> He was designing different technologies that they were using for their personal benefit, and had I not been personally present, when the presiding judge over there called and demanded that Judge Cupp release him from Sullivan County Jail, and had I not been subpoenaed to go to Richmond, along with Judge Cupp, for the judicial misconduct hearings that resulted in the removal of that judge, I would not believe any of the things that have happened in Mr. Stanley's life.

17. With the Plaintiff still in the custody of Sullivan County, Interchange Judge Cupp, and General Perrin then launched investigations into Defendant Stump's actions. As also set forth in General Perrin's testimony in **EXHIBIT 1**, this included reporting the events to the Virginia Supreme Court's judicial oversight authorities.

18. A formal Judicial misconduct investigation was instantiated by the Virginia Supreme Court, led by Kenneth Montero, assistant counsel and lead investigator for the Virginia Judicial Review Commission.

19. Defendant DOE learned about Judicial misconduct investigation, and leaked knowledge of this, to Defendant Stump.

20. This judicial misconduct investigation was not the first such investigation Defendant Stump had been under, with incidents as early as 1995 coming under the scrutiny of the Virginia Supreme Court.

21.     Fearing removal from the bench, upon learning that he had come under another misconduct investigation, Defendant STUMP caused and directed threats to be conveyed to Plaintiff through private messengers, including threats delivered at Plaintiff's family residence in Kingsport Tennessee, in June of 2002. (**EXHIBIT 7 Annexed Herewith**) These threats were designed to deter Plaintiff from testifying or presenting evidence in the judicial misconduct investigation underway, spawned by the formal complaints of Tennessee Interchange Judge Cupp and Assistant Attorney General Perrin, who themselves had been called to Richmond, to testify against Defendant Stump.   (**EXHIBIT 1 as previously Annexed Herewith**)

22.     DOE Defendants, acting in ministerial or clerical capacities within the Wise County Circuit Court Clerk's Office, entered or caused to be entered false information into Plaintiff's official criminal docket, stating that restitution obligations remained unpaid.  These forgeries were used, inter alia, to aid and abet, the unlawful abridgments of the Plaintiff's constitutional protections.

23.     These forgeries were uncovered, and flagged, by the Tennessee Secretary of State, General Elections Counsel, upon the Plaintiff's mailed-in application to register to vote. (**EXHIBIT 5 Annexed Herewith**)

24.     The Tennessee Secretary of State Elections Counsel, flagged the forgeries detected in the Plaintiff's official criminal docket, published online by the Virginia Supreme Court.

25.     As shown in **EXHIBIT 5**, upon flagging the forgeries for investigation, the Elections Counsel contacted Defendant DOE, who in response, compounded the constitutional harms the forgeries themselves cause, and willfully engaged in criminally false representations transmitted to the Tennessee Secretary of State's voter suitability investigation, by representing the forged entries as being legitimate.

26. The forged entries in the Plaintiff's docket, and Defendant DOE's knowingly false affirmation of those forgeries, were cited as disqualifying grounds to the Plaintiff's application to register to vote, and the Plaintiff's application was rejected. **EXHIBIT 5.**

27. This Plaintiff took great investigative care, track down, locate, and interview the former Elections Counsel, Jessica Lim, in order to verify the details of her communicative denial of Plaintiff's voter application, before including these abridgments of his constitutional rights, in this Complaint.

28. Upon learning of these forgeries, Plaintiff immediately noticed the Clerk of the Wise County Circuit Court, of the forgeries in his official docket, and their impact.

29. The Clerk's Office of the Wise County Circuit Court, immediately provided sealed, signed certified documentation, and provided certified Orders from his official file, that the Plaintiff had in fact, satisfied all restitution obligations to the Commonwealth, 24 years earlier. **EXHIBIT 3, EXHIBIT 4 Annexed Hereto.**

30. Despite their own sworn validations, uttered in January of 2024, in EXHIBIT 3, of the falsity of the forged entries to the Plaintiff's official criminal record, **EXHIBIT 3 and EXHIBIT 4, previously annexed hereto, Defendant DOE intentionally prevented the Clerk's Office from correcting the forged entries, for more than 1 year,** claiming, variously, that the records had been locked by the Supreme Court. This was clearly, was a misleading, non-adjudicative administrative deception which delayed the rectification of the Plaintiff's record docket. **EXHIBIT 8 Annexed Hereto**

31. Defendant Doe caused false impressions of unpaid restitution still owing, to be conveyed to the Tennessee Secretary of State, the Plaintiff, and Virginia Delegate Terry Kilgore, that the Clerk's office was 'working with the Supreme Court' to get the forged entry rectified, on 25 MAR 2024, forcing a Clerk, to plead with the Plaintiff, for a few days, to correct the forgery. Given that there was never any request ever needed for the Supreme Court, to remedy the forgeries, compounded by the long-standing Virginia statutes precluding the Supreme Court's web admins from even MAKING any changes, those same statutes vesting the lone authority to the Clerk's Office, Defendant DOE orchestrated a sophisticated, deliberate administrative deception, one that laid blame upon other parties, while knowing the Clerk's office, singularly, had the access and authority, to remedy those forgeries.

32. After 11 months of efforts, administratively, cordially, to get the forgeries corrected, the Plaintiff then made live contact, with Alissa Padden, the Virginia Supreme Court administrator responsible for the online publication of the Plaintiff's official criminal record docket, the published repository which contained the forgeries at issue. As shown in **EXHIBIT 10 Annexed Hereto**, Director Padden, relayed the following to the Plaintiff, in a live phone conversation:

32.A that no one from the Wise County Clerk's office, had contacted their office, nor lodged any request, to make changes or corrections to the Plaintiff's online docket, and

32.B that, under Virginia statutes, no person at the Supreme Court, or any other entity than the Clerk of the Court, had the authority, or computer access, to make any change to the official criminal record docket, and

32.C that the representation that a portion of the docket record, was, had been, or even could be, 'locked' was an entirely false excuse, an egregious administrative deception. Defendant DOE had direct knowledge, that no such mechanism for locking the Clerk's office out of such records, did, or could ever, exist, with the computer data control architecture of the system operated by the Supreme Court.

33. This conversation with Director Padden, confirmed, that for over one year, DOE Defendants had knowingly refused prevented the Clerk's Office, to correct the record, despite clear notice of its falsity, and direct, written admissions from the Clerk's office, and despite the Clerk, having the singular, exclusive authority and mechanical access, to enact those corrections.

34. Upon notice of this confirmation from Supreme Court official Padden, Defendant DOE then caused all further communication with the Plaintiff, to be cut off.

35. The Plaintiff submits, that this intentional refusal to allow the Plaintiff's online docket, to be corrected, extended the delay in the Plaintiff qualifying to register to vote, was a knowing, willful abridgment of his constitutional rights, was, in fact, an orchestrated, institutional defamation in its own right, and compounded the intentional abridgment of his rights to register to vote in Tennessee, his place of residence.

36. With the Clerk's Office having cut off all communications with Plaintiff, the Plaintiff then filed a Writ of Mandamus, with the Virginia Supreme Court, to enforce the corrections, and remove the forgeries from his online docket. **(EXHIBIT 2, Annexed Hereto)**

37. Within 36 hours after being served the Writ, a Clerk from the Wise County Supreme Court, called the Plaintiff, and undertook, the very same day, to make the factual corrections to the forged elements in his online docket.

38. This immediate correction was made to the Plaintiff's criminal record docket, by the same exact Clerk, whom Defendant DOE had prevented from making the correction a year earlier, completely belying the earlier subterfuge concocted by Defendant DOE, that the record was supposedly 'locked' by the Supreme Court.

39. This immediate correction was made to the Plaintiff's criminal record docket, by the same exact Clerk, whom Defendant DOE had instructed to falsely convey to the Plaintiff, Tennessee Secretary of State, and Delegate Kilgore, completely belying the ruse that the Clerk's office had contacted the Supreme Court, and the Supreme Court was enacting the remedy in a few days.

40. It bears restating, that the representations orchestrated by Defendant DOE, a year earlier, that the record was 'locked' by the Supreme Court, that the Supreme Court had been notified and was making the corrections in a few days, those were all an elaborate, intentional set of misdirecting mechanisms, which prolonged the life-span of the forgeries entered by Defendant DOE, compounding the harms to the Plaintiff, including the costs of expending an entire year of efforts to work with the Clerk's office, to correct a forgery, which only the Clerk's Office could have created, and only the Clerk's Office could correct, all along.

41. The Plaintiff, inter alia, traveled to Nashville, TN, meeting with the Secretary existence, and efficacy, and false legitimacy, of the forgeries entered into the Plaintiff's online docket.

42. These acts of the DOE Defendants were administrative and ministerial in nature, not judicial, and were undertaken without lawful authority or jurisdiction.

43. The act of entering the forgeries themselves into the Plaintiff's official docket, by Defendant DOE, caused, inter alia, a direct, falsely-suborned obstruction of the Plaintiff's right to register to vote in his state of residence, and through minimal Discovery, the Plaintiff can determine the author of the forgeries, from audit information retained by the Supreme Court, but, to date, that body's administrative officers have ignored all requests to produce this information, a public record under Virginia statute.

44. The investigation into the forged records, produced the Plaintiff's discovery that $80,960 in funds posited by the Plaintiff with the Clerk's Office, in November of 2000, and referenced in **EXHIBIT 3** and **EXHIBIT 4**, was, and remains, completely unaccounted for, not a single record of the cashier's check being deposited into the Clerk's trust account, nor any records whatsoever, of any required disbursement of those funds, as ordered.

45. Though not the direct subject of this Complaint, the likely connection between the missing money, and the forgeries complained of herewith, is impossible to discount as sheer galactic coincidence.

46. On September 22, 2025, the Clerk's Office sent an email to Plaintiff which can only be characterized as a disturbing new subterfuge. The email :

    a. Now claimed uncertainty as to whether the $80,960 restitution cashier's check deposited on November 27, 2000 had ever been processed by the Clerk, despite 19 months and a Write of Mandamus being litigated over the missing money and its connected issues

    b. Suggested the missing restitution payment, may have been handled by probation instead. This new 'theory' from the Clerks, upon information and belief, was

concocted by Defendant DOE, to create yet another administrative deception; in plain terms, concocting a whole new goose chase, to send the Plaintiff after.

**c.** To a degree, this new goose chase, worked.  The Plaintiff contacted the Virginia Department of Probation and Parole, the Norton Virginia office that was involved in his Virginia cases.  The Plaintiff was informed, that Virginia statutes expressly prohibit the Probation department from acting in any fiduciary role; that even if the missing cashier's check HAD been errantly left with their office, they would have physically taken the instrument, to the Clerk of the Court, the one and only financial repository and fiduciary, for criminal restitution.  **EXHIBIT 9 Annexed Hereto**

**d.** This new administratively orchestrated goose chase directly contradicted the Clerk's own certifications of having taken receipt of the $80,960. **(EXHIBIT 3)**

**e.** This speculation contradicted the Court's Orders of December 2000,  directing the Clerk to disburse the funds, and the admissions by the Clerk's Office during Plaintiff's writ proceedings. **(EXHIBIT 3)**

**f.** This misleading suggestion was in contradiction to long-standing Virginia statutes and Agency policy, regarding which Constitutional Officer (the Clerk of the Court) is authorized to act as the fiduciary of criminal restitution. **Code of Virginia § 19.2-305.1, 2.**  Defendant DOE knew that the Probation department would not, and could not have acted as the fiduciary to the Plaintiff's restitution funds.

**g.** Taken in context, these new, wildly different representations as to the possible fate of the Plaintiff's $80,960 restitution payment, such dramatic digressions, evidences either incompetence or intentional obfuscation,  and heightens the urgency for preservation of all records and communications. (**EXHIBIT 6 Annexed Herewith**)

# COUNT I – 42 U.S.C. § 1983 – Injunctive and Declaratory Relief for Violation of Plaintiff's Fourth and Fourteenth Amendment Rights

19. Plaintiff does not challenge any judicial rulings, orders, or adjudications, but only realleges the extrajudicial conduct, and incorporates by reference all preceding paragraphs as though fully set forth herein.

20. At all times relevant, Defendant STUMP and DOE Defendants acted under color of state law.

21. Defendant STUMP, acting wholly outside his judicial capacity and absent any lawful order of competent jurisdiction, personally engaged in extrajudicial acts designed to interfere with Plaintiff's liberty and due process rights, including (a) coercive, ex parte intervention in Tennessee proceedings, and (b) retaliatory threats aimed at deterring Plaintiff from reporting judicial misconduct.

22. DOE Defendants, whose precise identities are presently unknown, engaged in ministerial and administrative acts that likewise deprived Plaintiff of constitutional rights. Their conduct included:

  - entering or causing to be entered false information into Plaintiff's docket;

  - refusing or failing to correct the false docket entries for more than one year after notice;

  - disseminating the false docket information to outside agencies; and

  - issuing contradictory statements in September 2025 regarding custody of the $80,960 restitution, despite Orders and certifications proving Clerk custody and responsibility.

23. The acts of Defendants collectively deprived Plaintiff of liberty and property interests without due process of law, in violation of the Fourteenth Amendment, and subjected Plaintiff to reputational and tangible legal harms in violation of the Fourth and Fourteenth Amendments.

24. Plaintiff has suffered, and continues to suffer, irreparable injury for which monetary damages alone are inadequate. Plaintiff therefore seeks prospective declaratory and injunctive relief to prevent further constitutional injury and to preserve the evidentiary record.

*****************************

# TABLE OF EXHIBITS

**Exhibit 1** – Transcript Testimony of Assistant Attorney General Joseph Eugene Perrin (State of Tennessee v. David Stanley, Case No. C78747, Sullivan County Circuit Court, July 9, 2024).

**Exhibit 2** – Petition for Writ of Mandamus filed in the Supreme Court of Virginia, Case No. CR88F00044-00, addressing the Wise County Clerk's refusal to correct forged docket entries (2024).

**Exhibit 3** – Wise County Circuit Court Order (Dec. 18, 2000) confirming Plaintiff's full restitution payment of $80,960 and directing disbursements.

**Exhibit 4** – Clerk's sworn certification (Jan. 31, 2024) confirming Plaintiff had fully satisfied all obligations as of December 2000.

**Exhibit 5** – Tennessee Coordinator of Elections denial letter and attorney email (Oct. 16, 2020), citing the forged Virginia docket entry as basis for rejecting restoration of voting rights.

**Exhibit 6** – Clerk Email (Sept. 22, 2025) from Suzanne Ramsey, Master Deputy Clerk, suggesting restitution may have been handled by probation, contradicting Orders and prior Clerk certifications.

**Exhibit 7** – Sworn Affidavits from Sheila Stanley, and the Rev Robert Lee Stanley, and Declaration from Plaintiff, attesting to the threats sent by Defendant Stump, in June of 2002, after Defendant Stump, had learned he was under a new judicial review investigation by the Virginia Supreme Court, and was attempting to thwart those investigations, by threatening Plaintiff and his family in Tennessee.

**Exhibit 8** – the 25 MAR 24 written communication issued by Clerk's Office, sent to Plaintiff, the Tennessee Secretary of State General Elections Counsel, and Virginia Delegates member Terry Kilgore, CONFIRMING the online forged entry at issue, was a false entry, and claiming, falsely, that the Clerk's office was working with the Supreme Court, to correct the error. As Plaintiff did not learn, until 10 months afterward, the Supreme Court was never even notified of the error, nor did the Court administrators have any lawful authority to make ANY change to the online record, that being vested solely, exclusively, with the Clerk of the Court.

**Exhibit 9** – DECLARATION from Plaintiff regarding his interview with Tennesseé Secretary of State General Elections Counsel Jessica Lim.

**Exhibit 10** – Communication sent to the Wise County Circuit Court Clerk's office, in January of 2025, relaying the Plaintiff's conversation with Allissa Padden, Legislative Director for the Virginia Supreme Court, and publisher of the Court's official online criminal records docket,

who confirmed to the Plaintiff, of 3 key facts :

1) that no one from the Wise County Clerk's office, had contacted their office, nor lodged any request, to make changes or corrections to the Plaintiff's online docket, and

2) that, under Virginia statutes, no person at the Supreme Court, or any other entity than the Clerk of the Court, had the authority, or computer access, to make any change to the official criminal record docket, and

3) the representation that a portion of the docket record, was, had been, or even could be, 'locked' was a totally false fabrication

*****************************

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Declare that the extrajudicial acts of Defendant STUMP violated Plaintiff's rights under the Fourth and Fourteenth Amendments;

2. Declare that the administrative and ministerial acts of DOE Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments;

3. Enter an injunction prohibiting Defendants, their successors, agents, or anyone acting in concert with them from maintaining or disseminating false docket entries concerning Plaintiff;

4. Direct that accurate correction of Plaintiff's docket be preserved and maintained as the official record, with no alteration or erasure absent judicial order of competent jurisdiction;

5. Require that all records and communications related to the forged docket entries, restitution payment, and extrajudicial acts at issue be preserved pending discovery; and

6. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**David Stanley**

Plaintiff Pro Se