DAVID KIM STANLEY,            )
                                 )
     Plaintiff,          )
v.                         )        No. 2:25-CV-00151-DCLC-CRW
                                 )
J. ROBERT STUMP et al.,     )
                                 )
     Defendants.      )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Judge J. Robert Stump's Motion to Dismiss [Doc. 46], Judge Stump's Memorandum in Support [Doc. 47], Plaintiff David Kim Stanley's Response in Opposition [Doc. 48], and Judge Stump's Reply [Doc. 50]. For the reasons below, the Court will grant Judge Stump's motion.

## I. BACKGROUND

To bring necessary context to this suit, the Court begins by taking judicial notice of an earlier federal case[1] in which Mr. Stanley, who is a pro se litigant, sued Judge Stump—a former judge of the Circuit Court of Wise County, Virginia, [First Am. Compl., Doc. 39, at 7]—in the United States District Court for the Western District of Virginia:

> This case stems from the plaintiff's 1989 convictions in Wise County, Virginia, of securities fraud, embezzlement, and obtaining money by false pretenses. Following his convictions, the plaintiff was sentenced by Virginia Circuit Court Judge J. Robert Stump to thirty-six years imprisonment with twenty-eight years suspended, and ordered to pay restitution. After he served three years imprisonment, the plaintiff's sentence was modified to probation and in 1996, he left Virginia and moved to California without making full restitution to his victims. In 2000, the

---

[1] The Court has license to take judicial notice of judicial opinions. *See United States v. Dedman*, 527 F.3d 577, 586 (6th Cir. 2008) ("The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are *bound to take judicial notice*, without plea or proof." (emphasis in original) (quoting *Lamar v. Micou*, 114 U.S. 218, 223 (1885))); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) ("[W]e may take judicial notice of judicial opinions[.]" (internal citation omitted)).

plaintiff returned to Virginia and turned himself in to the Wise County authorities. Judge Stump allowed the plaintiff to remain free on work release and ordered him to pay the rest of the 1989 restitution order. In 2001, Judge Stump found the plaintiff guilty of violating his probation, but in lieu of a jail sentence, Judge Stump ordered the plaintiff to complete 2000 hours of community service.

The plaintiff claims that the defendants violated his rights by, among other things, conspiring to extort money from him through threats of more jail time, attempting to prevent him from filing motions for relief in Judge Stump's court, and obtaining and issuing a fraudulent order to extradite him from California.

*Stanley v. Gray*, No. 2:06CV00031, 2007 WL 445366, at *1 (W.D. Va. Feb. 11, 2007), *aff'd,* 235 F. App'x 163 (4th Cir. 2007). The district court dismissed Mr. Stanley's claims against Judge Stump under the doctrine of judicial immunity. *Id.* at *2–3.

Mr. Stanley now brings suit in this Court against Defendants—Judge Stump, J. Jack Kennedy, whom Mr. Stanley identifies as the former Clerk of Court of the Wise County Circuit Court, and twenty John Does—and alleges that they conspired to create and operate "an extra-statutory restitution scheme, referred herein as a 'shadow escrow system.'" [First Am. Compl., Doc. 39, at 1]. He characterizes this "shadow escrow system" as a "non-statutory, non-judicial financial system devoid of lawful accounting, audit, or verification safeguards." [*Id.* at 3]. And under this alleged system, he asserts that he paid over $80,000 in restitution and that these payments "remain[] wholly unaccounted for." [*Id.* at 4]. In addition, he claims that Defendants, as part of their perpetration of this "shadow escrow system," created and maintained "materially inaccurate and forged docket entries that continue to harm [him]." [*Id.* at 3].

Under 42 U.S.C. § 1983, Mr. Stanley alleges the violation of his procedural due-process and substantive due-process rights,[2] false arrest, denial of access to the courts, and civil conspiracy.

---

[2] Mr. Stanley alleges a separate claim for deprivation of property—i.e., an alleged loss of "$80,960 and additional sums" that "have not been accounted for," [First Am. Compl., Doc. 39, at 40]—and the Court construes this claim as a due-process claim, *see* U.S. Const. amend. XIV (stating that no State shall "deprive any person of life, liberty, or *property*, without due process of law" (emphasis added)).

2

[*Id.* at 39–40]. Judge Stump moves the Court to dismiss these claims[3] and asserts, among other things, that the doctrine of absolute judicial immunity bars them. Like the United States District Court for the Western District of Virginia, this Court will dismiss Mr. Stanley's claims against Judge Stump.

## II. LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint.[4] *Id.* When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's allegations as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

---

[3] Although Mr. Stanley does not specify whether he is suing Judge Stump in his individual or official capacity, he alleges that Judge Stump's unlawful actions "were not taken in any judicial capacity," [First Am. Compl., Doc. 39, at 9], and the Court therefore construes his claim as an individual-capacity claim.

[4] As a pro-se litigant, Mr. Stanley is entitled to a "liberal[] constru[ction]" of his pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted).

3

A judicial officer may request the dismissal of a plaintiff's claims by raising absolute judicial immunity under Rule 12(b)(6), *Leech v. DeWeese*, 689 F.3d 538, 541 (6th Cir. 2012), and he has the burden of showing that he is entitled to immunity, *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993). Judicial officers are presumptively entitled to immunity, and the Court "err[s] on the side of granting immunity in close cases." *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019) (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

### III. ANALYSIS

Mr. Stanley's principal, and recurrent, accusation against Judge Stump is that he failed to act as a "neutral arbiter" in certain legal proceedings. [First Am. Compl., Doc. 39, at 17; *see id.* at 2 ("At its core, this case concerns judicial authority not to adjudicate, but to control, coerce, and conceal[.]")]. In this vein, he cites Judge Stump's "pattern of acting not as a neutral judicial officer," [*id.* at 13], and he raises numerous allegations that, he believes, are indicative of this pattern.

First, Mr. Stanley claims that Judge Stump "personally called Tennessee and demanded Plaintiff's release from Sullivan County Jail" but "had no lawful authority to direct, demand, or influence Plaintiff's custodial status in Tennessee." [*Id.* at 10]. He further alleges that Judge Stump's actions resulted in "judicial misconduct proceedings" and his "removal." [*Id.* at 11]. Second, he claims that Judge Stump, in response to these judicial misconduct proceedings, engaged in "obstruction" and "witness intimidation." [*Id.* at 12]. Third, he claims that Judge Stump issued a "facially and substantively void" warrant for his arrest in 2003 after "Virginia's jurisdiction over [him] had already terminated" because he was no longer on probation at the time and had paid his restitution in full. [*Id.* at 15]. According to Mr. Stanley, Judge Stump's alleged false arrest warrant is "the clearest possible example of a judge acting not as a neutral

4

arbiter." [*Id.* at 17]. Fourth, he claims that Judge Stump "abruptly recused himself, sua sponte, from all matters involving Plaintiff" but nevertheless "continue[d] to dictate outcomes from behind the curtain." [*Id.* at 17, 23].

### A. Statute of Limitations

Judge Stump argues that the one-year statute of limitations bars Mr. Stanley's claims against him [Doc. 47 at 6-15]. Mr. Stanley argues that he did not learn until July 2024 of the decade old actions taken by Judge Stump [Doc. 48 at 13]. Section 1983 contains no limitations period on its own so federal courts borrow the form State's period for personal injury actions. *Bozzo v. Nanasy*, 159 F.4th 1111, 1116 (6th Cir. 2025), *cert. denied*, No. 25-1151, 2026 WL 1463208 (May 26, 2026). "[F]ederal law dictates when a § 1983 claim accrues." *Id.* (citation omitted). The Sixth Circuit recently held that "a claim accrues when a 'plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Id.* (quoting *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015)).

Mr. Stanley filed this lawsuit on September 25, 2025 [Doc. 1]. Every act in which he alleges Judge Stump engaged occurred more than two decades prior to the filing of his lawsuit. For example, Mr. Stanley alleges Judge Stump called Judge Cupp before January 2003 [Doc. 39, at 9–15]. He alleges Judge Stump issued a capias on January 21, 2003 [*Id.* at 15]. He also alleges that Judge Stump recused himself from Mr. Stanley's case in 2004, and the hearings that he contends were coerced occurred on June 9 and November 4, 2004 [*Id.* at 19–24]. On its face, the conduct complained of is outside the one-year statute of limitations.

Mr. Stanley knew of each of these alleged acts when they occurred. He alleges that Paul Smith delivered threats to him and his family in person [Doc. 39 at 12–13]. Mr. Stanley moved to quash the capias in 2004 and that he refused to remain silent about his allegations regarding Judge

Stump [Id. at 19–20]. Mr. Stanley sued Judge Stump in federal court over the same capias and the same threats in 2005. *Stanley v. Gray*, No. 2:06CV00031, 2007 WL 445366, at *1 (W.D. Va. Feb. 11, 2007). That Mr. Stanley included a sworn declaration from Joseph Eugene Perrin does not provide for any tolling of the statute of limitations. That specific declaration provides corroboration that "the call occurred as a matter of historical fact and is not merely [Mr. Stanley's allegation." [Doc. 39 at 10]. "[T]he running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." *Thomas v. Macauley*, No. 1:24-CV-1351, 2025 WL 289193, at *4 (W.D. Mich. Jan. 24, 2025) (citations and quotations omitted).

Mr. Stanley alleges that the actions taken by Judge Stump are a continuing violation such that it tolls the statute of limitations. But the continuing-violation does not apply here. In fact, the "Sixth Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *see also Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257 (6th Cir. 2014) ("Courts have been 'extremely reluctant' to extend the continuing-violation doctrine beyond the context of Title VII.") (internal citations omitted). The acts that Mr. Stanley complains of are discrete acts allegedly committed by Judge Stump. And they were all completed decades ago. A continuing violation "is occasioned by continual unlawful acts, not continual ill effects from an original violation . . . Passive inaction does not support a continuing violation theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (quotations and citations omitted). Accordingly, Mr. Stanley's claims are time-barred.

6

### B. Res Judicata

Judge Stump also argues that res judicata bars Mr. Stanley's claims for the wrongfully issued capias and threats made to imprison Mr. Stanley for failure to pay. [Doc. 47 at 3]. Federal law governs the preclusive effect of a federal judgment. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Claim preclusion requires the following elements: (1) "there must be identity of parties," (2) "there must be identity of the two causes of action," (3) and "the action must be decided upon its merits." *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 304 (6th Cir. 2011).

Here, Mr. Stanley sued Judge Stump for the issuance of the same capias he sued in the Western District of Virginia for allegedly making threats regarding imprisonment. The district court there dismissed Mr. Stanley's claims against Judge Stump with prejudice on judicial immunity grounds and the Fourth Circuit affirmed. *Stanley*, 2007 WL 445366, at *2–3, *aff'd*, 235 F. App'x 163. The parties are the same and the facts are the same. That Mr. Stanley advances new legal theories does not save this latest case from dismissal because he could have raised those theories in the prior case that he filed in the Western District of Virginia.

The Court notes however that claim preclusion does not apply to the allegations regarding forged docket entries because they purportedly occurred after the judgment of the Virginia federal court. In any event, Judge Stump also claims absolute judicial immunity shields him from Mr. Stanley's claims. The defense of absolute immunity requires the Court to focus on "the nature of the function performed, not the identity of the actor who performed it." *Barrett v. Harrington*, 130 F.3d 246, 257 (6th Cir. 1997) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *see also Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Immunity does not apply where the conduct is nonjudicial, "i.e., actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). The Court notes that most of Mr. Stanley's claims challenge Judge Stump's conduct

7

outside of any judicial proceeding, acts that Mr. Stanley describes as "not taken in any judicial capacity." [First Am. Compl., Doc. 39, at 9]. The Court will address those claims on the merits. But Mr. Stanley's claim for false arrest challenges the issuance of a capias, which is within the judge's authority as a judicial officer. The Court will address that claim last.

### C. Due Process

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or federal law. *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). To state a claim under § 1983, a plaintiff must plausibly allege (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). At the outset, the Court notes that Mr. Stanley alleges that Judge Stump engaged in conduct "not taken in any judicial capacity." But Section 1983 reaches only conduct by a "person acting under color of state law." *Id.* A judge acting completely outside his role as a state judge is obviously not acting under color of law.

Despite that obvious pleading problem, the Court will address Mr. Stanley's claims. In a suit under § 1983, the "first inquiry" is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws,'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. § 1983), but with a "judicial-bias claim," most matters of judicial bias "are not constitutional ones" and instead are "answered by common law, statute, or the professional standards of the bench and bar," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (citations omitted). Indeed, only in "extraordinary" and "rare" situations can a judge's alleged judicial bias ascend to the level of an infringement of a party's constitutional rights. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868,

8

890 (2009). In case law, examples are few in number and include a judge's "direct pecuniary interest in the outcome" of a case, *Tumey v. Ohio*, 273 U.S. 510, 535 (1927), a judge's participation in a criminal trial after he had presided over the defendant's grand-jury proceedings as an accuser, *In re Murchison*, 349 U.S. 133, 138 (1955), a judge's decision to preside over a case despite the fact he had received an "extraordinary amount" of campaign contributions from one of the parties, *Caperton*, 556 U.S. at 872, and a judge's participation in a case despite "an earlier significant, personal involvement as a prosecutor in a critical decision in the defendant's case," *Williams v. Pennsylvania*, 579 U.S. 1, 16 (2016). These examples in common law stand for the precept that "[a] fair trial in a fair tribunal is a basic requirement of due process." *Caperton*, 556 U.S. at 876 (alteration in original) (citation omitted); *see Williams*, 579 U.S. at 8 (stating that "[d]ue process guarantees 'an absence of actual bias' on the part of a judge" (quoting *Murchison*, 349 U.S. at 136)).

Mr. Stanley's allegations against Judge Stump do not remotely resemble any of these examples in case law, and Mr. Stanley does not allege that Judge Stump is currently presiding as an adjudicator over any judicial proceeding—much less a trial—in which Mr. Stanley is now a party. Nor does he allege that Judge Stump engaged in any acts of judicial bias that tainted any past judicial proceeding in which he was a party. Instead, Mr. Stanley alleges that Judge Stump's acts of judicial bias were "not taken from the bench in any pending Virginia case" and were "extra-judicial" in nature, and he similarly alleges that "Virginia's jurisdiction over [him] had already terminated." [First Am. Compl., Doc. 39, at 9, 15]. Because he complains of only "*extra*-judicial" bias, [*id.* at 9 (emphasis added)]—that is, acts of judicial bias that allegedly occurred outside of any judicial proceeding—his allegations of judicial bias do not implicate the Constitution, *see In re Iron*, No. 25-5874, 2026 WL 1166828, at *2 (6th Cir. Apr. 29, 2026)

9

(recognizing that "[a] judge denies" a party constitutional due process when "the judge *presides over* a case where the objective 'probability' of actual bias on his part is unacceptably high" (emphasis added)). His claims of judicial bias are properly "answered by . . . the professional standards of the bench and bar," not § 1983, and indeed, he alleges that Judge Stump has had to answer for his alleged acts of judicial bias in "judicial misconduct proceedings." [First Am. Compl., Doc. 39, at 11].

Even if Mr. Stanley had pleaded that Judge Stump's alleged acts of judicial bias had arisen in a judicial proceeding, recusal—not civil damages—would be the proper remedy. *See Caperton*, 556 U.S. at 872 ("Under our precedents there are objective standards that require *recusal* when 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" (emphasis added) (quotation omitted)). Mr. Stanley has alleged that Judge Stump has already "recused himself, sua sponte, from all matters involving [him]," [First Am. Compl., Doc. 39, at 17], and he also alleges that the judicial misconduct proceedings against Judge Stump have resulted in his "removal," [*id.* at 11]. Mr. Stanley has already obtained the remedy the Due Process Clause provides for any allegations of judicial bias. *See Williams*, 579 U.S. at 13 ("Most questions of recusal are addressed by . . . ethical rules" that are "more stringent and detailed" than what the Due Process Clause demands and "already require disqualification in" most cases). For all these reasons, Mr. Stanley's claims against Judge Stump for due-process violations are hereby **DISMISSED**.

### D.  Denial of Access to the Courts

"[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983). Mr. Stanley alleges that "forged docket entries," which caused him to be unable

10

"to reconstruct the official record," have "impaired" his access to the courts, [First Am. Compl., Doc. 39, at 40], but Judge Stump, in pursuing the dismissal of Mr. Stanley's claim, argues that Mr. Stanley does not allege that he forged the record or was in any way personally involved in its forgery, *see* [Def.'s Mem., Doc. 47, at 17 ("[T]he First Amended Complaint devotes fifteen entire pages to the alleged misconduct of Defendant Stump without once ever mentioning the alleged forgery.")].

A defendant's personal involvement in the alleged constitutional violation at issue is a prerequisite to liability under § 1983. *See Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381, at *1 (6th Cir. Sept. 20, 1995) ("Liability cannot be established absent a clear showing that the defendants were personally involved in the activity forming the basis of the alleged unconstitutional behavior." (citing *Rizzo v. Goode*, 423 U.S. 362, 372 (1976))). Because Mr. Stanley fails to allege that Judge Stump was personally involved in the forgery of the record, he fails to allege a plausible claim for denial of access to the courts under § 1983, and his claim is hereby **DISMISSED**.

### E. Civil Conspiracy

Under § 1983, civil conspiracy requires "an agreement between two or more persons to injure another by unlawful action," *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quotation omitted), and Mr. Stanley, to state a claim for civil conspiracy, must allege "'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive [him] of [his] constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury," *id.* (quotation omitted). In alleging a civil conspiracy, he asserts that Judge Stump, alongside the other Defendants, "acted in concert to implement, maintain, and enforce the unlawful [shadow escrow] system," [First Am. Compl., Doc. 39, at 41], but Judge

11

Stump contends that Mr. Stanley fails to allege sufficient facts showing his involvement in the alleged conspiracy, and the Court agrees.

Again, Mr. Stanley does not allege that Judge Stump had any personal involvement in the forgery of the record, and although Mr. Stanley alleges that he had paid more than $80,000 in restitution and that these payments are "unaccounted for," [First Am. Compl., Doc. 39, at 4], he fails to allege facts showing that Judge Stump shared a conspiratorial objective in or acted in furtherance of the alleged conspiracy to deprive him of these payments. In fact, in a written order that Mr. Stanley filed as an exhibit alongside his complaint,[5] Judge Stump acknowledges that Mr. Stanley had made payments of restitution totaling $80,960 and credits these payments toward the restitution he owed to his victims. [Pl.'s Exhibit, Doc. 40, at 83–84]. That exhibit contradicts the predicate for Mr. Stanley's claim against Judge Stump and therefore trumps the allegations in Mr. Stanley's complaint.[6] *See Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, the exhibit trumps the allegations." (quotation omitted)); *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (citing )); *see also Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary

---

[5] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

[6] Mr. Stanley, in fact, has moved the Court to take judicial notice of the "related state-court proceedings." [Pl.'s Mot. for Judicial Notice, Doc. 49].

12

judgment." (citation omitted)). Mr. Stanley therefore fails to plead a plausible claim for civil conspiracy against Judge Stump, and his claim is hereby **DISMISSED**.

### F. False Arrest

Finally, Mr. Stanley accuses Judge Stump of false arrest, which requires him to allege sufficient facts showing that Judge Stump lacked probable cause to order his arrest. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). Mr. Stanley claims that Judge Stump "caused him to be arrested without lawful authority or probable cause," in violation of the Fourth Amendment. [First Am. Compl., Doc. 39, at 40]. Specifically, he alleges that, "On January 21, 2003, [Judge] Stump, acting sua sponte and without any sworn complaint, oath, or evidentiary predicate, caused to be issued a capias for Plaintiff's arrest, alleging a violation of probation." [*Id.* at 15]. He claims the capias "was facially and substantively void." [*Id.*]. His allegations that Judge Stump ordered his arrest without probable cause are conclusory, but even if he had mustered sufficient facts to support these allegations, the doctrine of absolute judicial immunity would bar his claim, as Judge Stump rightly argues.

Under the doctrine of absolute judicial immunity, judicial officers "are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. 335, 351 (1871); *accord Stump*, 435 U.S. at 355–56. They surrender their judicial immunity in only two circumstances, either when they act (1) outside of their judicial capacity or (2) "in the *complete* absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (emphasis added) (citations omitted). "Issuing an arrest warrant is a judicial act," *Norfleet*, 924 F.3d at 319 (citing *Foster v. Walsh*, 864 F.2d 416, 417–18 (6th Cir. 1988)), so the only question is whether Judge Stump

13

can show that he satisfies the second circumstance, *see Leech*, 689 F.3d at 541 (placing the burden of establishing absolute judicial immunity on the party seeking immunity).

Under the second circumstance, the Supreme Court has distinguished between judicial acts that are "in excess of jurisdiction" and in "clear absence of all jurisdiction." *Bradley*, 80 U.S. at 351. Only the latter—a judicial act in the clear absence of all jurisdiction—can defeat judicial immunity, *Mireles*, 502 U.S. at 11–12; *see Norfleet*, 924 F.3d at 319 ("The question, then, is not whether judges overstep their authority; it is whether they do so *clearly*." (emphasis added)); *see also Randall v. Bingham*, 74 U.S. 523, 537 (1868) (observing that an act must be "*palpably* in excess of jurisdiction" (emphasis added)), but the distinction between the two— a judicial act in excess of jurisdiction and a judicial act in the clear absence of all jurisdiction— is "not self-revealing," *Norfleet*, 924 F.3d at 319. "[I]f a probate judge," for example, "assumed authority over a criminal case, the judge would act in the clear absence of jurisdiction because he is 'invested only with authority over wills and the settlement of estates of deceased persons.'" *Id.* (quoting *Bradley*, 80 U.S. at 352).

Mr. Stanley alleges that Judge Stump acted "in the clear absence of all jurisdiction" when he issued the warrant for his arrest because he issued it in the "absence any pending case, jurisdiction, or lawful predicate," [First Am. Compl., Doc. 39, at 7–8], but Judge Stump argues that Mr. Stanley "fails to articulate facts showing that [he] was acting without jurisdiction or judicial capacity," [Def.'s Mem., Doc. 47, at 15]. A document that Mr. Stanley filed alongside his complaint as an exhibit—this time, a state-court transcript of a criminal hearing in the Wise County Circuit Court before Circuit Judge William Kerry in 2011—sheds light on and resolves the parties' dispute over judicial immunity in Judge Stump's favor.

At the hearing, Mr. Stanley appeared as a defendant with his attorney, and his attorney acknowledged that Judge Stump's arrest warrant had arisen from a "conflict regarding whether [Mr. Stanley's] done his actual term of incarceration, restitution, [and] community service." [Pl.'s Ex., Doc. 40, at 327:22–24]. To resolve this conflict, the parties agreed, as "a fair and equitable remedy," that Judge Kerry should dismiss the arrest warrant and place Mr. Stanley on unsupervised probation for eighteen months. [*Id.* at 327:5–8, 328:3–4]. Judge Kerry agreed to the parties' proposed resolution. [*Id.* at 330:1–12].

So, in short, Mr. Stanley claims that Judge Stump's arrest warrant had "alleg[ed] . . . a violation of probation," [First Am. Compl., Doc. 39, at 40], and similarly, the parties state in the transcript that the arrest warrant had stemmed from a "conflict" over whether Mr. Stanley had violated his probation, [Pl.'s Exhibit, Doc. 40, at 327:22]. The correct answer to this conflict is inconsequential. That is, whether Mr. Stanley, as he alleges, was in fact "not on probation in Virginia" when Judge Stump issued the arrest warrant is unimportant because this allegation, accepted as true, establishes only that Judge Stump acted *in excess* of his jurisdiction by issuing the arrest warrant. *See Norfleet*, 924 F.3d at 319 (acknowledging that "[i]f a judge with general criminal jurisdiction ruled that an act amounted to a crime when it did not, he would merely act in excess of jurisdiction" (citing *Stump*, 435 U.S. at 357 n.7; *Bradley*, 80 U.S. at 351)). A judicial act that is in excess of jurisdiction cannot defeat absolute judicial immunity. *Mireles*, 502 U.S. at 11–12; *Bradley*, 80 U.S. at 351; *Norfleet*, 924 F.3d at 319.

Under Virginia law, Judge Stump had subject-matter jurisdiction to issue a warrant for Mr. Stanley's arrest upon belief that Mr. Stanley had violated his terms of probation. Va. Code Ann. § 19.2-306; *see* Va. Code Ann. § 19.2-152.4:1. Judge Stump also had subject-matter jurisdiction to issue a warrant for Mr. Stanley's arrest upon belief that Mr. Stanley had failed

15

to pay restitution and that his failure to pay was unreasonable, i.e., a willful failure and not a failure from inability to pay. *Id.* § 19.2-305.1(G); *Slusser v. Commonwealth*, 87 2 S.E.2d 223, 229 (Va. Ct. App. 2022). Judge Stump, therefore, acted within his jurisdictional authority when he ordered Mr. Stanley's arrest for an alleged "violation of probation," as Mr. Stanley puts it, [First Am. Compl., Doc. 39, at 40], and even if the alleged violation ultimately lacked merit, as Mr. Stanley claims, Judge Stump still would have had the jurisdictional authority to issue the arrest warrant, *Norfleet*, 924 F.3d at 319; *see King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985) (recognizing that judges who operate within their jurisdiction are shielded from suit by absolute judicial immunity even if they act "erroneously" or "corruptly" (citing *Stump*, 435 U.S. at 356–59; *Bradley*, 80 U.S. at 351–52)); *see also Forrester v. White*, 484 U.S. 219, 226–27 (1988) ("If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." (citation omitted)).

In sum, when the Court accepts Mr. Stanley's allegations as true, draws all reasonable inferences in his favor, and construes his claims liberally, it cannot conclude that Judge Stump acted in the clear absence of all jurisdiction. Judge Stump has therefore met his burden of establishing that he is entitled to absolute judicial immunity, and Mr. Stanley's claim for false arrest is hereby **DISMISSED**, both under the doctrine of absolute judicial immunity and for failure to state a plausible claim.

## IV. CONCLUSION

For all these reasons, Judge Stump's motion to dismiss [Doc. 46] is **GRANTED**, and the Court **ORDERS** as follows:

16

1. All of Mr. Stanley's claims against Judge Stump are hereby **DISMISSED WITH PREJUDICE**;[7]

2. Under Federal Rule of Civil Procedure 54(b), these claims arise out of the same operative facts—i.e., the alleged shadow escrow system—as the claims against the remaining Defendants, *see Sherrod v. Wal-Mart Stores, Inc.*, 103 F.4th 410, 413–16 (6th Cir. 2024), and the Court will therefore reserve entry of a judgment order until it has adjudicated all the claims; and

3. Mr. Stanley's Motion for Judicial Notice of Related State-Court Proceedings [Doc. 49] is **GRANTED**.[8]

---

[7] "The grant of a Rule 12(b)(6) motion" for failure to state a plausible claim "is an adjudication on the merits," and the Court has discretion to order dismissal with or without prejudice, though "[t]he decision to dismiss with prejudice is a harsh sanction." *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990) (citations omitted). Like a dismissal for failure to state a plausible claim, a dismissal under the doctrine of absolute judicial immunity is proper under Rule 12(b)(6), *Leech*, 689 F.3d at 541, and it is a dismissal on the merits, *see Uhrig v. Johnson*, No. 24-5601, 2025 WL 1827793, at *2 (6th Cir. Mar. 27, 2025) (affirming the district court's dismissal with prejudice based on absolute judicial immunity); *Burnham v. Friedland*, No. 21-3888, 2022 WL 3046966, at *2 (6th Cir. Aug. 2, 2022) (Thapar, J., concurring) ("[J]udicial immunity isn't a jurisdictional doctrine; it's an affirmative defense that goes to the merits." (citing *Bright v. Gallia County*, 753 F.3d 639, 648–50 (6th Cir. 2014))).

"Ordinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice to give parties an opportunity to fix their pleading defects" *unless* "a party does not file a motion to amend or a proposed amended complaint," *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 645 F.3d 785, 795 (6th Cir. 2011) (citations omitted). Mr. Stanley has not moved to amend his complaint in response to Judge Stump's motion to dismiss. While, true, the Sixth Circuit has "more than once remanded a case to allow a pro se plaintiff leave to amend where it was not requested in the district court," *Brown v. Matauszak*, 415 F. App'x 608, 616 (6th Cir. 2011) (citations omitted), a district court's obligation to *sua sponte* permit a pro-se litigant to amend his complaint typically arises when the claims are "serious in nature," "include[] clearly sufficient information to allege a cause of action," and are "non-frivolous, perhaps even meritorious," *id.* at 616. But Mr. Stanley's claims against Judge Stump, for the reasons that the Court has articulated in this Opinion, uniformly lack sufficient facts to make up a viable cause of action and are borderline frivolous. Indeed, Mr. Stanley has brought iterations of these same claims in at least one other federal court, the United States District Court for the Western District of Virginia, and it too has dismissed them. *Stanley v. Gray*, No. 2:06CV00031, 2007 WL 445366, at *1 (W.D. Va. Feb. 11, 2007), *aff'd,* 235 F. App'x 163; *see* [Def.'s Mem., Doc. 47, at 3–6 (arguing that *res judicata* bars Mr. Stanley's claims)]. In addition, although a district court's obligation to *sua sponte* permit a pro-se litigant to amend his complaint can also arise when he is "likely to have been unaware of the requirements of Rule 15 of the Federal Rules of Civil Procedure," *Gordon v. England*, 354 F. App'x 975, 981 (6th Cir. 2009), Mr. Stanley has already amended his complaint, so he is aware of Rule 15, but he has nonetheless not moved to amend his complaint in response to Judge Stump's motion to dismiss. For all these reasons, dismissal of his claims with prejudice is proper.

[8] The Court may "only take judicial notice of facts which are not subject to reasonable dispute." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (footnote omitted). In moving the Court to take judicial notice of the state-court proceedings, Mr. Stanley does not argue that the state-court record is subject to reasonable dispute.

17

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

18